MICHAEL, Circuit Judge,
concurring in part and dissenting in part:
I concur in parts I, II, IV, and V of the majority’s opinion. I concur in part III insofar as it discusses and strikes down the second sentence of N.C. Gen.Stat. § 163-278.14A(a)(2), a statute that describes evidence that is sufficient to prove “that communications are ‘to support or oppose the nomination or election of one or more clearly identified candidates.’ ” Id. § 163— 278.14A (2002). I respectfully dissent from the majority’s decision in part III to strike down the first sentence of § 163-278.14A(a)(2). The first sentence is an explicative definition of express advocacy that passes muster under Federal Election Commission v. Massachusetts Citizens for Life, Inc., 479 U.S. 238, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986) (MCFL), and Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). I also concur in the result reached by the majority in part VI, but I would reach that result by slightly different reasoning.
I.
Again, § 163-278.14A describes the type of evidence necessary to prove that an individual’s or organization’s communications expressly advocate the election or defeat of a candidate. The first sentence of the provision at issue in this case, § 163-278.14A(a)(2), states that such evidence may include “[e]vidence of financial sponsorship of communications whose essential nature expresses electoral advocacy to the general public and goes beyond a mere discussion of public issues in that they direct voters to take some action to nominate, elect, or defeat a candidate in an election.” N.C. Gen.Stat. § 163— 278.14A(a)(2) (2002). The second sentence of the provision goes on to explain that “[i]f the course of action is unclear, contextual factors ... may be considered in determining whether the action urged could only be interpreted by a reasonable person *436 as advocating the nomination, election, or defeat of that candidate in that election.” Id. My disagreement with the majority, which strikes down the entire provision, relates only to the first sentence of § 163— 278.14A(a)(2). I agree with the majority that only express advocacy can be regulated and that we must look to the language used in the communication, rather than its context, to determine whether it is express advocacy. See ante at 12-13, 96 S.Ct. 612. Because the second sentence of § 163— 278.14A(a)(2) violates this standard, I agree that it must be struck down. The first sentence, however, only applies to communications whose “essential nature ... direct[s] voters to take some action to nominate, elect, or defeat a candidate in an election.” § 163-278.14A(a)(2). Unlike the second sentence, the first does not authorize the regulator to look beyond the text of he communication; specifically, it does not permit the regulator to consider what the communication’s effect might be on a reasonable listener.
The first sentence of § 163— 278.14A(a)(2) is faithful to the Supreme Court’s analysis in MCFL. There, MCFL published a flier that described individual candidates’ voting records on pro-life issues and urged readers to “VOTE PRO-LIFE,” while claiming that the flier did not “represent an endorsement of any particular candidate.” MCFL, 479 U.S. at 243-44, 107 S.Ct. 616. The Court noted that even though the flier did not use the same language cited in Buckley, 424 U.S. at 44 n. 52, 96 S.Ct. 612, such as “Vote for Smith,” it was “in effect an explicit directive.” MCFL, 479 U.S. at 249, 107 S.Ct. 616 (emphasis added). In other words, the flier’s “essential nature” was not changed just because it avoided using any of the words in Buckley’s examples of express advocacy. Id.
MCFL thus makes clear that a speaker may engage in express advocacy without using the magic words mentioned in Buckley. I acknowledge that § 163-278.14A(a)(l), the North Carolina provision that is not under challenge, would cover the sort of express advocacy used by MCFL. However, the phrases and constructions described in § 163-278.14A(a)(l) are examples and are not meant to be an exhaustive list of exhortations that amount to express advocacy. Just as the examples in Buckley did not cover the clear message of exhortation in the flier in MCFL, so too might there be a communication of express advocacy that does not correspond neatly with the more expansive list of examples in § 163-278.14A(a)(l). For instance, if an organization like MCFL published a sample ballot, clearly marking the boxes next to pro-life candidates and leaving others blank (or striking through other candidates’ names), that should fall within the category of express advocacy for the election or defeat of particular candidates. Nevertheless, such an exhortation might not fall within the scope of § 163-278.14A(a)(l) because the exhortation does not include any language listed in that provision or any language that is similar to the examples given. The first sentence of § 163-278.14A(a)(2), however, would cover the sample ballot situation.
The first sentence of § 163-278.14A(a)(2) focuses only on express advocacy. However, rather than defining express advocacy by example or by the use of magic words, it provides an explicative definition. The sentence defines express advocacy as a communication that “goes beyond a mere discussion of public issues in that [it] direct[s] voters to take some action to nominate, elect, or defeat a candidate in an election.” § 163-278.14A(a)(2). This definition is consistent with MCFL, 479 U.S. at 249, 107 S.Ct. 616 (noting that the flier was express advocacy because it *437 went beyond “mere discussion of public issues” and instead “provide[d] in effect an explicit directive” to vote for certain candidates), and Buckley, 424 U.S. at 44, 96 S.Ct. 612 (describing communications “that in express terms advocate the election or defeat of a clearly identified candidate”). Unlike the second sentence of the provision, the first sentence avoids the error of relying on the effect on the speaker or of relying on the broader context in which the communication appears. See Va. Soc’y for Human Life, Inc. v. Fed. Election Comm’n, 263 F.3d 379, 391-92 (4th Cir.2001). The first sentence requires, in other words, that the communication “literally include words which in and of themselves advocate the election or defeat of a candidate,” VSHL, 263 F.3d at 391 (internal quotations and emphasis omitted), without limiting or detracting from the unchallenged companion provision, § 163— 278.14A(a)(l), which defines express advocacy by use of examples. In my opinion, the first sentence of § 163-278.14A(a)(2) is constitutional.
As the majority notes, North Carolina’s election laws include a severability provision. N.C. GemStat. § 163-278.6 (2002); see also ante at 26 n. 26. I would therefore uphold the first sentence of § 163-278.14A(a)(2) but join in the majority’s opinion striking down the second sentence of that subsection.
II.
Finally, I concur in the result reached in part VI of the majority’s opinion, which concludes that NCRL’s challenge to § 163-278.12A, relating to the reporting of expenditures, is moot. I would reach that conclusion by a slightly different path. As the majority notes, our opinion in Perry v. Bartlett, 231 F.3d 165, 162 (4th Cir.2000), states that § 163-278.12A is unconstitutional. Our opinion in Perry, however, affirmed the district court’s injunction order, which only prohibits North Carolina from enforcing § 163-278.12A against the Perry plaintiffs. I do not believe, as does the majority, that the application of the injunction in Perry is unlimited. Nevertheless, I agree in the end that NCRL’s challenge to § 163-278.12A is moot because North Carolina’s brief in this appeal acknowledges that this section is unconstitutional and is not enforceable. See Telco Communications, Inc. v. Carbaugh, 885 F.2d 1225, 1230-31 (4th Cir.1989) (finding an issue moot when there was no “reasonable expectation” that the state would seek to enforce the statute in question because the state “conceded the unconstitutionality of the statute”). I therefore agree with the majority’s conclusion that NCRL’s challenge to § 163-278.12A is moot.